706 A.2d 793

JOSEPH PINO, PETITIONER–APPELLANT, v. BOARD OF
TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT
SYSTEM, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 11, 1998—Decided March 6, 1998.

Before Judges SHEBELL, D'ANNUNZIO and RODRIGUEZ.

*Richard A. Friedman,* argued the cause for appellant (*Zazzali, Zazzali, Fagella & Nowak,* attorneys; *Mr Friedman,* on the brief).

*Sherrie L. Gibble,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Ms. Gibble,* on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

Joseph Pino appeals from a determination by the Board of Trustees of the Public Employees' Retirement System (Board) that he is not entitled to an accidental disability pension because the incident resulting in his injury and disability was not a "traumatic event." *N.J.S.A.* 43:15A-43.

Pino was a school bus driver employed by the Board of Education. On February 6, 1993, he was operating a school bus with a capacity of twenty passengers. Approximately fifteen to eighteen students and coaches were in the bus. It was a snowy day and the road, Interstate Route 280, was snow-covered and icy. As Pino reached the bottom of a hill, his school bus was struck in the left rear by the right front of an Oldsmobile Toronado. According to Pino, the impact pushed him forward against the steering wheel and back again against his seat. The impact propelled the bus at a forty-five degree angle to the right. Pino gained control of the bus and brought it to a stop. A finding below that the damage to the bus was minimal is supported in the record. The most that anyone ever testified to was that there was a dent in the left rear bumper and perhaps the left rear quarter panel. No one else on the bus was injured.

Pino did not immediately report an injury to himself and did not believe that he had been injured until he began to experience low back pain radiating into his left leg. A hospital record states that Pino "had no complaints immediately following the incident, how-

ever, the next few weeks he began to have severe low back pain with radiating pain down the left leg." The evidence indicates that he first sought medical attention on March 24, 1993, approximately six weeks after the accident, when he saw Dr. Andrew Weiss. Pino worked until April 27, 1993. The evidence supports a finding that he sustained a herniated disc at the level L5–S1, a bulging disc at the level L4–L5, and that he had pre-existing "degenerative arthritis" in his lumbosacral spine. He underwent various diagnostic tests and two surgical procedures, one in May 1993 and another in December 1993.

Initially the Board determined that Pino was disabled, but that his disability was not the direct result of the February 6, 1993 bus accident and that the bus accident itself was not a "traumatic event." The Board, therefore, approved an "ordinary disability" retirement under *N.J.S.A.* 43:15A–42. Pino appealed, but before the hearing, the Board reconsidered and determined that, in fact, his disability was a direct result of the bus accident. The Board persisted, however, in its determination that the accident did not constitute a traumatic event.

The matter was heard by an Administrative Law Judge (ALJ) and, in his initial decision, the ALJ determined that the incident did not qualify as a "traumatic event" as that phrase has been defined by our Supreme Court. The Board adopted the ALJ's recommended findings and conclusions.

■ The applicable principles of law are well-settled, and our Supreme Court restated them most recently in *Mazza v. Board of Trustees,* 143 *N.J.* 22, 667 *A.*2d 1052 (1995). To qualify as a traumatic event the applicant for accidental disability retirement must establish that the "source of the injury itself was a great rush of force or uncontrollable power." *Id.* at 24, 667 *A.*2d 1052 (quoting *Kane v. Board of Trustees,* 100 *N.J.* 651, 663, 498 *A.*2d 1252 (1985)).

■ Our scope of review is narrow:

Although sometimes phrased in terms of a search for arbitrary or unreasonable agency action, the judicial role is generally restricted to three inquiries: (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[*Mazza v. Board of Trustees, supra,* 143 *N.J.* at 25, 667 *A.*2d 1052 (1995) (citing *Campbell v. Department of Civil Serv.,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963)).]

Applying this limited standard, the Supreme Court in *Mazza* affirmed the denial of an accidental disability retirement to an Essex County Park Police officer whose "disability arose when the officer's horse bucked and 'reared up,' causing the officer's body to twist in the saddle and suffer a disabling rupture of spinal discs. Officer Mazza's body went numb; he slumped over and lay on the saddle until his horse that 'had ridden the trails for years . . . brought [him] back to the barn.'" *Id.* at 23, 667 *A.*2d 1052.

Although this is a close case, we are persuaded that, in light of the standard of review, the Board's determination must be affirmed. The Board's action did not violate any express or legislative policies. Indeed, the Legislature has not modified the test for accidental disability in response to the Supreme Court's definition of traumatic event in *Cattani v. Board of Trustees,* 69 *N.J.* 578, 355 *A.*2d 625 (1976) and *Kane v. Board of Trustees, supra,* and despite the Board's restrictive approach to accidental disability claims. There is substantial evidence supporting the Board's determination. Damage to the bus was minimal and none of the passengers was injured. Pino did not sustain an immediately disabling injury which might have supported an inference that the source of his injury was a "great rush of force or uncontrollable power." To the contrary, Pino did not seek medical attention for six weeks and continued working for two and one-half months. Although Pino first testified that the Toronado was going fast when it struck his bus, the testimony has no probative value because he testified that he did not see the Toronado before it struck his bus. Pino testified that his bus' speed was twenty-five miles per hour when the Toronado struck it. At best,

therefore, the record establishes only that the Toronado was traveling in excess of twenty-five miles per hour when it struck the bus that was traveling in the same direction. The differential in speed and the concomitant impact could have been as little as a few miles per hour. Finally, there was no evidence that the injuries Pino sustained required the degree of force and power which would have qualified the incident as a traumatic event. *But cf. Fawcett v. Board of Trustees,* 307 *N.J.Super.* 378, 704 *A.*2d 1041 (App.Div.1998) (holding that appellant who, as a passenger in a vehicle, was injured when she was thrown against the back of her seat and then forward against the dashboard, suffered a traumatic event); *Flores v. Board of Trustees,* 287 *N.J.Super.* 274, 670 *A.*2d 1113 (App.Div.1996) (ruling that employee's fall into trench when roadway collapsed was traumatic event).

Affirmed.